IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:     1:17CR00063-002 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE       SARA LIOI |
| v. | ) | |
| | ) | |
| MUHAMMAD SALETT, | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | OF MUHAMMAD SALETT |

I.    Background and Circumstances of the Offenses.

On April 4, 2017, the Defendant, Muhammad Salett, entered a guilty plea to Possession of Controlled Substance (Fentanyl) with the Intent to Distribute, in violation of 21 U.S.C. § 841 (a)(1), 21 U.S.C. § 841 (b)(1)(A).

A presentence investigation was conducted in this case and sentencing is set for July 13, 2017, at 11:00 a.m. in this Court. Pursuant to the terms of the plea agreement, Mr. Salett pled guilty to the indictment.

The Defendant and the Government established an advisory guideline computation with a base offense level of thirty two (32).

The office of the U.S Attorney (U.S.A.O.) recommended a two (2) level reduction for acceptance of responsibility under USSG §3E1.1(a) and a one (1) level reduction for acceptance of responsibility under USSG §3E1.1(b).

The total offense level after the reduction is a level twenty nine (29).

1

II.     Muhammad Salett and his mother, Cecelia Johnson.

Muhammad Salett has three half siblings born of his mother, Cecelia Johnson. A maternal half brother, Jason Moore, age 45, lives in Columbus, Ohio. Another maternal half brother is Antoine Johnson, age 40, whose whereabouts are unknown and who has not seen Muhammad Salett for very many years. A maternal half sister, Lakeisha Johnson, unknown by Muhammad, was placed for adoption at a young age after intervention from Cuyahoga County Children's Services.

Cecelia Johnson, presently age 61, first became a mother, at age 15. Muhammad, her youngest child, relates that she has struggled with alcohol and substance abuse problems throughout her life. Muhammad believes that during his mother's pregnancies all of her children were exposed to the effects of drug and alcohol abuse. Muhammad was himself, a crack baby, and  recalls his childhood years as a time of disruption and transiency.

As a youngster dependent on his mother, he remembers looking up to her and seeking to love her, yet questioning why there was always such chaos, stress, and uncertainty. He and Cecelia were often in and out of the home they shared with his father, Joseph C. Salett. When out of the home, they were reliant on the charity of his mother's siblings.

They would spend weeks and sometimes months away from his father's residence, only to ultimately return and then move out again. He witnessed many episodes of domestic violence between his parents. He explains that this was in part caused by his father being addicted to alcohol, cocaine, marijuana, and such other illicit drugs as were available. His mother similarly abused drugs and alcohol.

During the interludes when Muhammad and Cecelia took residence with her friends or family members, he has memories of being hungry, unwanted, and feeling out of place.

2

Even then, his mother would often disappear for days on end. He would be left alone with strangers and near-strangers. He felt the resentment of those around him for eating their food and taking up space.

Muhammad's feelings intensified to fears of abandonment, confusion, and being unloved. Out of necessity, he continued to try to love his mother, but began to recognize that her poverty, addictive life style, choice of friends, and mental instability, would likely never change.

When he was around age 7, Muhammad's parents agreed to permanently separate. Cecelia and he moved in with his mother's sister, Belinda Barber. Auntie Belinda maintained a level of solace for him. As long as Muhammad was in her home, he was well fed, clean, and loved by her. Cecelia, nevertheless, disrupted this stability as she continued to pursue a transient life, and remained unable to preserve any permanency.

Although he hoped for a better life after his parents separated, dysfunction continued. Before attaining the age of 16, Muhammad attended Rainey Elementary, Case Elementary, John D. Rockefeller Elementary, Wilson Middle School, East High School, Shaw Alternative School, and was even shuffled back and forth between these schools. Despite the transiency of his school years, Muhammad recalled obtaining acceptable grades (B's and C's) and participating in intramural football and basketball.

Emulating the conditions around him, Muhammad began smoking marijuana as young as age 8. Across his adolescent and teen years, he additionally used and experimented with cocaine, heroin, crack, and alcohol.

In 2008, he ended up at the Marion Juvenile Correctional Facility. There he attended Hickory Grove High School, a confined academic institution within the Marion Juvenile Facility. In 2009, Muhammad obtained his GED from Hickory Grove High School. The State of Ohio closed Hickory Grove High School in 2010.

III.     Muhammad Salett and his father, Joseph C. Salett.

Muhammad described his father, Joseph C. Salett as a hardworking man, who fathered four children. The oldest child, Pandora Ramsey, age 61, is a half sister to Muhammad. As Pandora is the same age as Muhammad's mother, he never knew her well.

Muhammad's parents met in 1987 when Joseph was age 51 and Cecelia was age 31. They never married. Muhammad notes that the 20 year age difference between his parents was perhaps too great of a divide. Both parents were impacted by substance abuse issues which worsened the problems of their relationship.

Incidents of domestic violence occurred between both parents due to their temperaments and use of drugs and alcohol. Joseph C. Salett also fathered two other half siblings to Muhammad. Don Salett, age 60, lives in Cleveland, Ohio. Due to this half brother being much older than Muhammad, they have never been particularly close. A half sister, Troy Salett, was born in 1964, and Muhammad has meaningful memories of her. She died in 2003, when Muhammad was a 14 year old teen. It appears that he was truly grief stricken by the death of Troy, and that her passing negatively impacted his adolescence.

Muhammad states that his father, Joseph C. Salett, worked hard to maintain the relationship with Cecelia, but it was not meant to be. Joseph was a strong father who was loved by his children. To the best of his ability he supported them emotionally and financially. Joseph died December 4, 2016, at the age of 80.

4

IV.    <u>Muhammad Salett and his Aunt, Belinda Barber.</u>

Muhammad describes his Aunt Belinda as one who loved him unconditionally. She watched over him and his mother, Cecelia, by sharing her home and her resources. In many ways she was a surrogate mother who believed in Muhammad and recognized his positive qualities. His memories of the many times he and his mother landed at Belinda's doorstep are a testament to familial love.

In an example of reciprocal generational kindness, Muhammad has served as a father figure to Belinda's three grandsons, Dierre, Jr., age 10, Derreon, age 7, and DeJzuan age 6. Their father, Dierre Barber, Sr., was killed by gun violence in 2011. Sadly, Belinda Barber, died of health complications on March 19, 2017.

V.    <u>Muhammad Salett and his significant other, Yolanda Thornton.</u>

Although Muhammad is not the biological father of any children, he has parented the two young children (ages 4 and 9) of his significant other, Yolanda Thornton. They now have been a couple for two years and remain committed to one another despite Muhammad's legal circumstances. Yolanda intends to have Muhammad return to her home when his sentence is concluded.

VI.    <u>Muhammad Salett's Substance Abuse and Mental Health.</u>

The dysfunction within Muhammad's life appears to have commenced before birth. His mother, Cecelia Johnson, has a long history of addiction and substance abuse. As related above, Muhammad, born during the 1980's, was himself a crack baby.

Substance abuse has been prominent throughout Muhammad's life, and in the lives of nearly all who have surrounded him. His criminal record is not exceptionally extensive, but does reflect events involving drug use and drug trafficking.

5

Muhammad's academic and institutional records do not reveal any treatment or programming to address the addiction and dysfunction which have been present throughout his life. His circumstances of dysfunction and addiction have indications of being endemic. His own statements indicate that he struggles with issues of depression, post traumatic stress disorder, addiction, and possible grief. By any measure, the parenting he received in his life appears to be grossly deficient. The shortcomings of his youth have carried into adulthood. Muhammad remains a young man who can benefit from mental health counseling and substance abuse programming.

VII.    <u>Sentencing Consideration.</u>

Under the authority of <u>United States v. Booker</u>, 543 U.S. 220 (2005), and <u>Gall v. United States</u>, 128 S. Ct. 586, 595-597 (2007), the Federal Sentencing Guidelines are now advisory in nature only, and District Courts are to use their broad discretion in sentencing, first calculating the applicable guidelines range and then considering 18 U.S.C. § 3553(a) factors in reaching sentencing decisions. Under these standards, each case is to be individually considered. 18 U.S.C. § 3553(a) states:

> (a)   **Factors to be considered in imposing a sentence.** - The Court shall impose a sentence, sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -
>
>     (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>     (2)   the need for the sentence imposed -
>
>         (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>         (B)   to afford adequate deterrence to criminal conduct;

    (C)  to protect the public from further crimes of the defendant; and

    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for -

  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines -

    (i)  issues by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28;) and

    (ii)  that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

  (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issues by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertained policy statement...issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities...; and

(7) the need to provide restitution to any victims of the offense.

As set forth in Paragraph 32 of the Presentence Report, the adjusted offense level in this case is 29, although it may be subject to a minimal modification.

18 U.S.C. § 3553(a) factors include "...the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1). These have been discussed above.

Various factors are included in § 3553(a)(2). § 3553(a)(2)(A) and include, the need for the sentence imposed - "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Muhammad Salett has pleaded guilty to Possession of Controlled Substance (Fentanyl) with the Intent to Distribute, in violation of 21 U.S.C. § 841 (a)(1), 21 U.S.C. § 841 (b)(1)(A).

He acknowledges that he may face the possibility of years of imprisonment. He further acknowledges that he is subject to a minimum term of imprisonment of ten (10) years and a maximum term of imprisonment of life. The contents of the plea agreement may substantially reduce the potential of imprisonment and fine range.

18 U.S.C. § 3553(a)(2)(B) relates to the need for the sentence imposed to "...afford adequate deterrence to criminal conduct." Mr. Salett expects that the components of any sentence he receives will serve the purposes of this provision.

18 U.S.C. § 3553(a)(2)(C) relates to protecting the public from further crimes. Issues of mental health, social and cultural settings, and  addiction, greatly contributed to the conduct giving rise to Mr. Salett's criminal behavior. He has accepted responsibility, and is prepared to accept the decisions of this Court. In view of his prior criminal history and his young age of 27, rehabilitation remains a hopeful option.

18 U.S.C. § 3553(a)(2)(D) involves the need for the sentence imposed - "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Resources are present both within and outside of the penal system to assist Mr. Salett with substance abuse treatment, mental health care, and other necessary training. Mr. Salett acknowledges that services for psychological care and drug treatment are available through the prison system, and that aftercare is vital to successful rehabilitation.

VIII.   Conclusion

It is requested that this Court may structure a sentence which allows treatment, training, and minimizes the imposition of any prolonged imprisonment.

Muhammad Salett is 27 years old and acknowledges that his personal history demonstrates a pattern of involvement with the justice system. It is stated, however, that much of his history is directly connected to conduct involving drugs and alcohol. By his own admission, Mr. Salett indicates that his drug and alcohol use began when he was just 8 years old. Problems which began when he was a very young boy have continued on through adulthood.

Mr. Salett requests understanding by this Court and desires to commence the process of someday returning to his loved ones and to society.

>                               Respectfully submitted,
>
>                               /s/ Donald R. Hicks_____
>                               Donald R. Hicks #0034221
>                               Attorney for Defendant
>                               159 South Main Street, Suite 423
>                               Akron, Ohio 44308
>                               donhickslaw@aol.com
>                               (330) 762-5500
>                               (330) 762-2011 Fax

CERTIFICATE OF SERVICE

    I hereby certify that on this 7th day of July, 2017, a copy of this Sentencing Memorandum of Muhammad Salett was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

                                                  /s/ Donald R. Hicks_____
                                                  Donald R. Hicks #0034221
                                                  Attorney for Defendant